IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARTHA KNOX, as Personal | ) | |
| Representative of the ESTATE OF | ) | |
| ELOISE KNOX, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-cv-0299-MEF |
| | ) | (WO – Publish) |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Martha Knox, as Personal Representative of the Estate of Eloise Knox ("Plaintiff"), brings this premises liability action against the United States of America ("Defendant")[1] to recover for injuries Eloise Knox (the "Decedent") suffered when she slipped and fell in the meat section of the Maxwell Air Force Base commissary in Montgomery, Alabama. Now pending before the Court is Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Doc. #17.) The Court has reviewed

---

[1] Plaintiff also asserts her claims against the U.S. Department of the Air Force. (Doc. #1.) However, because the FTCA does not permit lawsuits against parties other than the United States, *see Trupei v. U.S.*, 304 F. App'x 776, 782 (11th Cir. 2008) (citing *Galvin v. OSHA*, 860 F.2d 181 (5th Cir. 1988)), and in light of Plaintiff's stipulation, the U.S. Department of the Air Force is not a proper party to this action and, therefore, is due to be DISMISSED. Thus, this opinion will address Plaintiff's claims against the United States of America only.

the submissions of the parties and finds that, for the reasons set forth below, Defendant's Motion is due to be GRANTED.

## II. JURISDICTION AND VENUE

The Court has subject-matter jurisdiction over Plaintiff's claims pursuant to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1).  The FTCA grants district courts original jurisdiction over civil suits against the United States as if it were a private person for, among other things, personal injuries caused by the negligent acts or omissions of government employees committed in the scope of their employment.  *Id.*  The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations supporting both.

## III. LEGAL STANDARD

A motion for summary judgment looks to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A court should grant summary judgment when the pleadings and supporting materials show that no genuine dispute exists as to any material fact and the moving party deserves judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the relevant documents that "it believes demonstrate the absence of a genuine [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alteration to original).  To shoulder this burden, the moving party can present

2

evidence to this effect. *Id.* at 322–23. Or it can show that the non-moving party has failed to present evidence in support of some element of its case on which it ultimately bears the burden of proof. *Id.*

If the moving party meets its burden, the non-movant must then designate, by affidavits, depositions, admissions, or answers to interrogatories, specific facts showing the existence of a genuine dispute for trial. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995). A genuine issue of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in his or her favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Thus, summary judgment requires the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Indeed, a plaintiff must present evidence demonstrating that she can establish the basic elements of her claim, *Celotex,* 477 U.S. at 322, because "conclusory allegations without specific supporting facts have no probative value" at the summary judgment stage. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

A court ruling on a motion for summary judgment must believe the non-movant's evidence. *Anderson*, 477 U.S. at 255. It also must draw all justifiable inferences from the evidence in the non-moving party's favor. *Id.* After the non-moving party has responded to the motion, the court must grant summary judgment if there exists no genuine issue of material fact and the moving party deserves judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

3

## IV. FACTS

The Court has carefully considered all the evidence submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to Plaintiff, the non-moving party, establish the following facts:

On October 1, 2010, at approximately 3:00 p.m., the Decedent and her daughter, Martha Knox, drove to the commissary at Maxwell Air Force Base to purchase cubed ham.  Upon arriving at the commissary, the Decedent and her daughter selected a shopping cart, collected several items from the produce department, and then proceeded to the meat department where the cubed ham was located.  The Decedent's daughter testified that, upon entering the meat department, she did not notice anything on the floor.  (M. Knox Dep., Doc. #31-3.)  Not able to find what they were looking for, the Decedent and her daughter went to the dairy section to pick up milk and eggs.  While walking back from the dairy section to the meat department to look for cubed ham again, the Decedent slipped and fell.  She was in front of a chill display case holding the commissary's pre-packaged ham selection at the time of her fall.  Both the Decedent and her daughter testified that they did not notice anything on the floor when they returned to the meat department from the dairy department.  (E. Knox Dep., Doc. #32-1; M. Knox Dep., Doc. #33-1.)

At the time the Decedent fell, William Howard ("Howard"), the Meatcutter Helper on duty, was fronting[2] the meat counter adjacent to the location of the fall.   Attending to his

---

[2] According to Howard, "fronting" or "fluffing" involves organizing items on the display case and checking dates on the meat.  (Howard Dep., Doc. #31-5.)

duties, Howard did not see the accident because his back was to the Decedent when she fell. He was approximately two feet from her at the time.  Upon hearing the commotion, Howard turned around and saw the Decedent lying on the floor.   He contacted the grocery department manager on duty, Felicia Howe ("Howe"),[3] who arrived on the scene shortly thereafter.  Howard then helped the Decedent up from the floor to a chair by the edge of the meat counter.

It was not until after Howard helped the Decedent to her feet that anyone noticed the foreign substance on the floor.  The Decedent testified that she did not know what the substance was, but that it was "kind of gushy looking." (E. Knox Dep., Doc. #32-1.)  The Decedent's daughter testified that the substance was "like a streak," "dark in color" and approximately a foot and a half long and eight inches wide.  (M. Knox Dep., Doc. #33-1.) The Decedent's daughter did not take any pictures of the substance, nor did she notice any odor emanating from it.  (M. Knox Dep., Doc. #33-1.)  Both the Decedent and her daughter testified that they did not know what the substance was, how long it had been on the floor, or how it got there.  (E. Knox Dep., Doc. #32-1; M. Knox Dep., Doc #31-1.)  Howard did not dispute the testimony given by the Decedent or her daughter, nor did he provide any additional information as to the size, color, consistency, location, or source of the substance. (Howard Dep., Doc. #31-5; Howard Dec. ¶¶ 5, 6.)  Shortly after arriving, Howe was shown the dark substance on which the Decedent allegedly slipped and fell.  Howe directed Howard

---

[3]  The depositions and briefs in this case frequently refer to the manager on duty as Felicia Howell. However, it appears from her deposition that her correct name is Felicia Howe, and she will be addressed as such in this opinion.

to clean up the substance, which he did with a towel.

According to his testimony, Howard inspected the area around the counter containing the pre-packaged hams "just prior" to the Decedent's fall and before he began fronting the meat.  Howard's inspection revealed nothing spilled on the floor.  (Howard Dec. ¶ 5.) Furthermore, no one had made any complaints about foreign substances on the floor of the meat department before the Decedent fell.  (Howard Dec. ¶ 6.)  Howard, however, conceded in his deposition that his primary purpose for being in the area of the Decedent's fall was only to front the meat; in other words, he was not actively checking for spills.  (Howard Dep., Doc. #31-5.)  Thus, Howard may not have seen the spill before the Decedent's fall if the substance was not in the path he used to walk to the meat counter.  (Howard Dep., Doc. #31-5.)

After her fall, the Decedent was transported by wheelchair from the meat department to her daughter's car.  At 7:00 p.m. that night, the Decedent was taken to the hospital where she was diagnosed with a fractured pelvis.

Eloise Knox filed suit against the United States for negligence, wantonness, failure to warn, and failure to hire, train, or supervise.  (Doc. #1.)  When Eloise Knox passed away on September 12, 2012, her estate was substituted as the proper party plaintiff, with her daughter acting as her personal representative.  (Doc. #34.)  Plaintiff does not claim that the fall caused or contributed to the Decedent's death.  The United States filed its Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on April 4, 2013 (Doc. #17), which the Court will address below.

6

## V. DISCUSSION

As an initial matter, Plaintiff has stipulated that her wantonness claim is due to be dismissed.   Therefore, summary judgment is GRANTED with respect to Defendant on Plaintiff's wantonness claim as alleged in Count One of the Complaint.

That leaves the Court to address Plaintiff's negligence, failure to warn, and failure to hire, train, or supervise claims, all of which are brought under the FTCA.   Specifically, Plaintiff alleges that Defendant was negligent in failing to clean up the substance on which the Decedent fell, to warn customers about the substance, and to properly hire, train, or supervise commissary employees.   In response, Defendant argues that it is entitled to summary judgment on all of Plaintiff's claims because Plaintiff has failed to establish that Defendant breached any duty of care it owed to the Decedent as an invitee and because there is no evidence of incompetency as to the maintenance of the floor or that any such incompetency was brought "home to the knowledge of the master."

### A.      The FTCA and Applicable Law

The United States, as sovereign, is generally immune from suit unless it waives its immunity.   *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Monzon v. United States*, 253 F.3d 567, 570 (11th Cir. 2001).   Under the FTCA, the United States has waived its sovereign immunity in actions by private parties for torts committed by employees acting on behalf of the United States.   28 U.S.C. § 1346(b)(1).   That statute authorizes suits

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under

7

> circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.* Claims brought under the FTCA are governed by the substantive law of the state where the alleged act or omission giving rise to liability occurred. *Id.* The alleged act or omission in this case occurred at the Maxwell Air Force Base commissary. Thus, Alabama law applies.

**B.     Plaintiff's Negligence/Failure to Warn Claims[4]**

Under Alabama law, the elements of negligence in a premises liability case "are the same as those in any tort litigation: duty, breach of duty, cause in fact, proximate or legal cause, and damages." *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002) (citations and quotations omitted). A store or business like the Maxwell Air Force Base commissary is "under a duty to exercise reasonable care to provide and maintain a reasonably safe premises" for its invitees—its customers.[5] *Maddox v. K-Mart Corp.*, 565 So. 2d 14, 16 (Ala. 1990); *see also Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1054 (Ala. 2003) ("The duty owed to an invitee by [a business] is the exercise of ordinary and reasonable care to keep the premises in a reasonably safe condition."). Moreover, if the premises is in a dangerous condition, and the business knew or should have known of the condition, the business owner has a duty "to give sufficient warning so that an invitee might avoid danger

---

[4] The Court will address these claims collectively because Plaintiff must show that Defendant had notice of the offending substance prior to the Decedent's fall in order to prevail on either claim.

[5] Defendant does not dispute that the Decedent was an invitee of the commissary when she fell.

by the use of ordinary care." *Banks. v. Bayou Bend II, Ltd.*, 552 So. 2d 1070, 1071 (Ala. 1989).  But a store owner is not an insurer of a customer's safety and is liable only if it negligently fails to keep the premises in a reasonably safe condition.  *Dolgencorp, Inc. v. Hall*, 890 So. 2d 98, 101 (Ala. 2003).  This is why mere proof of an accident or injury is not enough to establish negligence.  *See Lowe's Home Ctrs., Inc. v. Laxson*, 655 So. 2d 943, 946 (Ala. 1994) ("No presumption of negligence arises from the mere fact of an injury to an invitee . . . .").

To establish liability in a slip-and-fall case, a plaintiff must first prove that the defendant business had notice of the substance that caused the accident.  *See Maddox*, 565 So. 2d at 16.  This can be done in one of three ways: (1) by showing that the business had actual notice that the substance was on the floor; (2) by showing that the substance had been on the floor so long that the store had constructive notice of it; or (3) by showing that the store was otherwise delinquent in failing to discover and to remove the substance.  *Id.*; *Cox v. W. Supermarkets, Inc.*, 557 So. 2d 831, 832 (Ala. 1989); *Richardson v. Kroger Co.*, 521 So. 2d 934, 935–36 (Ala. 1988); *see also Williams v. Wal-Mart Stores, Inc.*, 584 F. Supp. 2d 1316, 1319 (M.D. Ala. 2008).  A store's delinquence can be shown where the store or one of its employees created the hazard,  *see Dunklin v. Winn-Dixie of Montgomery, Inc.*, 595 So. 2d 463, 464 (Ala. 1992); *Nelson v. Delchamps, Inc.*, 699 So. 2d 1259, 1261 (Ala. Civ. App. 1999), or where there is evidence that a business's inspection procedures are inadequate or were performed inadequately on the day of a plaintiff's fall.  *See Hale v. Kroger, Ltd. P'ship I*, 28 So. 3d 772, 783 (Ala. Civ. App. 2009).

9

Defendant argues that summary judgment is appropriate because Plaintiff cannot produce any evidence that it had actual or constructive notice of a dangerous condition in the meat department, or that it was delinquent by either creating a hazard that proximately caused the Decedent's fall or by employing inadequate inspection procedures.  Defendant further argues that, in the absence of such evidence, Plaintiff cannot establish that Defendant owed, and subsequently breached, any duty to warn its customers of the substance.

### 1.  Actual Notice

In the complaint, Plaintiff alleges that Defendant had actual notice of the substance on which the Decedent allegedly slipped and fell.  However, it appears that Plaintiff has abandoned this argument at summary judgment, likely because there is no evidence to support such a position.  It is undisputed that neither the Decedent nor her daughter observed the spill before the Decedent fell, and, therefore, neither of them had reported it to Defendant prior to the Decedent's fall.  Howard likewise testified that he had not seen anything spilled on the floor "just prior" to the Decedent's fall.  (Howard Dec. ¶ 5.)  The evidence further shows that Howe was not notified of the spill until after the accident occurred.  (Howe Dep., Doc. #31-4.)  There is also no evidence of customer complaints to commissary employees about any type of substance on the floor in the meat department area before the Decedent's fall.  (Howard Dec. ¶ 6.)  Based on the foregoing, the Court is satisfied that Plaintiff has failed to create a triable issue as to whether Defendant had actual notice of the substance on which the Decedent allegedly slipped and fell prior to her fall.

### 2.  Constructive Notice

Constructive notice may be proven with circumstantial evidence that the substance had been on the floor for a long enough period of time that the business should have been aware of it. *Cash v. Winn-Dixie of Montgomery, Inc.*, 418 So. 2d 874, 875 (Ala. 1982). "Direct evidence of the length of time the offending substance has remained on the floor is not required." *Id.* An inference may be made as to the length of time a substance has been on the floor from "the nature and condition of the substance," but this inference must be a reasonable one. *Id.* at 876. For example, "[w]here the substance is dirty, crumpled, or mashed, or has some other characteristic that makes it reasonable to infer that it has been on the floor a long time, the business may be found to have had a duty to discover and remove it." *Maddox*, 565 So. 2d at 17. To show that a defendant had constructive notice, "the plaintiff must present evidence about the source of the substance that caused the slip and fall and not rely on 'speculation, conjecture or guess.'" *Rhodes v. United States of America*, 2007 WL 2710385, at *3 (M.D. Ala. Sept. 13, 2007). Absent evidence of Defendant's constructive notice, there can be no finding that Defendant breached its duty to the Decedent, and, therefore, no *prima facie* case can be established. *See Tidd v. Wal-Mart Stores, Inc.*, 757 F. Supp. 1322, 1324 (N.D. Ala. 1991).

Plaintiff concedes that there is no direct evidence showing the length of time the substance was on the floor. Instead, she relies on circumstantial evidence and asks the Court to infer therefrom that the substance on which the Decedent allegedly fell had been on the floor a sufficient period of time so that Defendant should have been aware of its presence. Plaintiff points the Court to *Cook v. Wal-Mart Stores*, *Inc.*, 759 F. Supp. 2d 1269 (M.D. Ala.

2001).  In *Cook*, the plaintiff slipped and fell on a banana peel located on the pavement in a Wal-Mart parking lot.  *Id.* at 1272.  The plaintiff and two other witnesses had not noticed the banana on their way into or out of the store, and only testified about its condition after the plaintiff's fall.  *Id.* at 1274.  This testimony indicated that the banana was "squished," "smashed," "rotten," "black," "yellow," and "brown."  *Id.*  Based on this evidence, the district court denied summary judgment, finding that it was reasonable to infer  from the plaintiff and two witnesses' testimony that the banana had been in the parking lot for a sufficient period of time for the defendant to have constructive notice of its presence given the "evidentiary rule" that a substance's "dirtied, crumpled, mashed . . . or [like]" condition may present a triable issue of constructive notice.  *Id.* at 1275.

Plaintiff urges this Court to follow *Cook*, reasoning that, like the banana's dark color in *Cook*, the substance's dark color here supports a reasonable inference that it had accumulated dirt from being on the floor for an extended period of time.  Plaintiff further contends that the substance's "gushy" appearance, like the banana in *Cook*, supports a reasonable inference that the substance had been on the floor for an extended prior of time because it was in the process of drying.  Finally, Plaintiff argues that the size and shape of the substance, which Martha Knox described as a foot-and-a-half long and an eight inch wide "streak," suggests that it remained on the ground long enough to have been walked through by other customers prior to the Decedent's fall and that a reasonable jury could infer that Defendant should have seen the substance based solely on its large size.  Taken cumulatively, Plaintiff contends that there is a genuine dispute as to whether Defendant was on constructive

12

notice of the spill and, therefore, owed its invitees a duty to either clean it up or warn them of its presence.

The Court finds the evidence presented by Plaintiff insufficient to create a genuine dispute as to whether Defendant had constructive notice of the substance prior to the Decedent's fall. First, *Cook* is readily distinguishable from this case. It was reasonable in *Cook* to infer the length of time the banana had been present based on its dark, rotten, squashed state precisely because it is common knowledge that bananas are not dark, rotten, and squashed when sold or purchased; rather, bananas acquire these characteristics as a function of time and exposure to the elements. In this case, without knowing what the substance looked like when first spilled, there is no way to infer how long it was on the ground based on its color and consistency when the Decedent fell, unless the Court engages in speculation and guesswork, which it is not permitted to do. There is simply no evidence that the substance as described after the Decedent's fall was not in that same condition before her fall. Absent such evidence, the Court cannot impute constructive notice to Defendant. *Compare Tidd*, 757 F. Supp. at 1323 (refusing to impute constructive notice absent any evidence of the identity of the foreign substance on which plaintiff fell prior to the fall), *with Maddox*, 565 So. 2d at 17 (inferring that the substance was on the floor long enough to impute constructive notice where testimony indicated the liquid was "coke" and, that at the time of the fall, it was "sticky" and "looked like it was trying to dry").

Second, it is not reasonable to infer the length of time the substance had been on the floor from either the size of the spill or testimony that it was a "streak." Despite the high

volume of traffic at the commissary on the day of the Decedent's fall, there is no evidence that any customers complained about a spill on the floor in the area where the Decedent fell, nor is there any evidence of cart-tracks or foot-prints through the substance (which would be consistent with heavy shopping traffic). *See Rayburn v. Wal-Mart Stores, Inc.*, 2009 WL 2905600, *4 (M.D. Ala. Sept. 4, 2009) (refusing to find a triable issue where there were no track marks, foot prints, or black marks through a puddle of water).  Thus, without more, neither the sheer size of the substance nor the description of the substance as a "streak" by the Decedent's daughter after the fall lead to the reasonable inference the substance had remained on the floor for a significant period of time. *Tidd*, 757 F. Supp. at 1324 ("A large, sudden spill gives an invitor no additional notice merely because of its size.").

Finally, the absence of any evidence indicating that someone had seen the spill prior to the Decedent's fall militates against imputing constructive notice of its presence to Defendant.  Both the Decedent and her daughter testified that they had not seen any substance on the floor either time they entered the meat department and did not do so until after the Decedent's fall.  Howard also testified that he had not seen any substance on the floor in the area "just prior" to the Decedent's fall.  In sum, the evidence demonstrates that no one knew how long this substance had been on the floor prior to the Decedent's fall.  If anything, this suggests just the opposite of what Plaintiff is arguing, *i.e.*, that the substance was likely present on the floor a matter of minutes before the Decedent's fall. *See, e.g.*, *Rayburn*, 2009 WL 2905600 at *4 (finding four to five minutes an insufficient time to support a jury finding defendant had constructive notice); *Hale*, at 781 (finding that, because

14

the spill had not been discovered minutes earlier during the inspection process, it could not have been there long enough to impute constructive knowledge on the defendant); *Hose v. Winn-Dixie Montgomery, Inc.*, 658 So. 2d 403,405 (Ala. 1995) (finding five to ten minutes an insufficient length of time to impute constructive notice of a substance's presence); *Vargo v. Warehouse Groceries Mgmt., Inc.*, 529 So. 2d 986, 987 (Ala. 1988) (finding "only minutes" an insufficient length of time to impute constructive notice of a substance's presence).

When viewing the evidence in the light most favorable to Plaintiff, the Court can find on the record nothing that would create a triable issue as to whether Defendant had constructive notice of the substance's presence prior to the Decedent's fall.

### 3. Delinquent Maintenance

Proof of actual or constructive notice is dispensed of in cases in which the business or one of its employees creates the dangerous condition[6], *Dunklin*, 595 So. 2d at 464; *Nelson*, 699 So. 2d at 1261, and in cases in which the evidence indicates that the business's inspection procedure was inadequate or performed inadequately on the day of the plaintiff's fall. *Hale*, 28 So. 3d at 783. Plaintiff first argues that the commissary's floor maintenance policy and procedure was inadequate, but the Court disagrees. Plaintiff points to the testimony of Howe[7] and argues that employees were not informed of the commissary's

---

[6] Plaintiff makes no argument that Defendant or one of its employees created the dangerous condition.

[7] In its reply, Defendant notes Plaintiff's failure to follow citation rules under the Uniform Scheduling Order in her brief and requests that the Court disregard her arguments made therein. While the

policies and procedures for detecting and cleaning substances spilled on the floor and that they were not required to conduct regular aisle checks. However, in the Court's opinion, Plaintiff grossly mischaracterizes Howe's testimony. Indeed, as Defendant correctly points out, Plaintiff omits any reference to Goodwill Industries, the independent contractor hired by Defendant for the purpose of maintaining the floors. In fact, Howe testified that commissary employees are informed during training about the commissary's policies and procedures for floor maintenance and about the division of labor between themselves and Goodwill Industries. (Howe Dep., Doc. #31-4.) This testimony is corroborated by Howard, who specifically stated that there was a policy in place for cleanups and that he was trained to follow it. (Howard Dep., Doc. #31-5.) While it may be true that *commissary* employees are required and trained only to clean up spills they notice while completing other assigned duties or as they become available, and are not required to stop what they are doing to perform routine aisle checks, this is because these tasks are the primary responsibility of *Goodwill Industries* employees.[8] Thus, considering Goodwill Industries' role in maintaining the cleanliness of the floors, there is insufficient evidence that Defendant's procedures were

---

Court takes notice of Plaintiff's failure to follow the Uniform Scheduling Order's directions, and admonishes her for doing so, the Court declines to ignore the arguments made in her brief as a result.

[8] At pretrial conference, Plaintiff acknowledged the role Goodwill Industries played in maintaining the floor but nonetheless argued the meat counter area was governed by its own policy. Defendant contends that the existence of a clean-up kit behind the meat counter relieved Goodwill Industries of primary responsibility for cleaning up spills in this area. Not only is there no evidence to support this position, evidence before the Court suggests otherwise. The spill kit was in the area to allow meat counter employees to quickly clean up small spills that did not require Goodwill Industries assistance. In this way, Defendant's cautious clean up policy facilitated a more rapid response to local spills, and thus reduced the risk of substances lingering on the ground for an extended period of time by not requiring meat counter employees to wait for Goodwill Industries to arrive.

inadequate as they relate to cleaning up potential slip-and-fall hazards in the store.

Plaintiff also argues that, even if the procedures in place were adequate, Defendant's maintenance of the floor on the day in question was inadequate.  The Court finds that there is no evidence to support this argument.  Plaintiff contends that Howard's inspection was inadequate because he inspected only the pre-packaged meat as part of his fronting duties, he did not inspect the floor surrounding the area and, even if he did, he was too busy doing his fronting duties for the inspection to have been thorough.  Howard's testimony, however, indicates that he inspected the area "just prior" to the Decedent's fall while en route to attend to his fronting responsibilities and that his inspection revealed no spills.  Moreover, there is no evidence suggesting that Howard's inspection of the floor was inadequate simply because it was not his primary task.  Employees in an area are capable of making a sufficient inspection of the floor while walking to perform the duties to which they are assigned, and there is no indication that the number of commissary and Goodwill Industries employees on duty that day were inadequate to properly monitor for, and clean up, spills.  Finally, Howard simply being in the area where the Decedent fell at the time of her fall is not enough to establish a genuine dispute as to Defendant's negligence.[9]  *See Williams v. Wal-Mart Stores, Inc.*, 584 F. Supp. 2d 1316, 1320 (M.D. Ala. 2008) ("[t]here is no case law to support the argument that simply having employees in the vicinity provides evidence of negligence.").

In sum, Plaintiff has failed to meet her burden as to whether Defendant had

---

[9]  Howard testified that he was no more than two feet from the Decedent when she fell.  (Howard Decl. ¶ 4.)

17

notice—actual or constructive—of the substance on which the Decedent allegedly slipped and fell, or that Defendant's inadequate procedures or inadequate performance of its procedures proximately caused the Decedent's fall.   Therefore, summary judgment is due to be GRANTED to Defendant on Plaintiff's negligence and failure to warn claims as alleged in Counts One and Two of the complaint.

**C.     Failure to Hire/Train/Supervise**

Plaintiff's final claim is that the Decedent's fall was a result of Defendant's negligent hiring, training, and supervision of its employees.   In Alabama,

> [i]n the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him.   Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence. This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice. . . .

*Lane v. Cent. Bank of Al., N.A.*, 425 So. 2d 1098, 1100 (Ala. 1983) (quotations omitted). Plaintiff marshals the same evidence in support of this claim that she did to support her delinquent maintenance claim.   As stated above, Plaintiff can neither point to sufficient evidence that Defendant's maintenance policies were incompetent or that specific acts of incompetence were committed on the day in question so as to create a fact issue for trial. Accordingly, summary judgment is GRANTED to Defendant on Plaintiff's negligent hiring, training or supervising claim as alleged in Count Three of the complaint. *Bedsole v. Clark*,

33 So. 3d 9 (Ala. Civ. App. 2009) (refusing to hold master liable for negligent hiring, training, or supervision absent a showing of incompetency by the servant).

## VI. CONCLUSION

For the reasons stated above, it is hereby ORDERED as follows:

1.  The U.S. Department of Air Force is DISMISSED WITH PREJUDICE from the above-styled case; and

2.  Defendant's Motion for Summary Judgment (Doc. #17) is GRANTED, and Plaintiff's claims are DISMISSED WITH PREJUDICE.

A separate final judgment consistent with this opinion is forthcoming.

DONE this day of 16th October, 2013

_____/s/ Mark E. Fuller_____
UNITED STATES DISTRICT JUDGE

19